THE SHELL COMPANY (P. R.) LIMITED, peticionaria, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE SAN JUAN, demandado; JOSÉ RAMOS, interventor.

Núm. 1933.—*Sometido:* Abril 1, 1952. *Resuelto:* Abril 30, 1952.

*Fernando Ruiz Suria,* abogado de la peticionaria; *Ismael Solde-vila,* abogado del interventor, demandante en el pleito principal.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

En el presente caso es necesario resolver si el tribunal de distrito abusó de su discreción al ordenarle a la demandada, a tenor con la Regla 33 de las de Enjuiciamiento Civil, que contestara ciertos interrogatorios escritos que el demandante, empleado suyo, le había notificado en un caso de reclamación de salarios.

El 2 de marzo de 1950 José Ramos instó demanda contra The Shell Company (Porto Rico) Limited reclamándole salarios dejados de percibir ascendentes a $8,156.78, más una cantidad similar como penalidad, que la demandada supuestamente le adeudaba por concepto de horas extras trabajadas por el demandante entre noviembre 7 de 1935 y mayo 15 de 1949, como chófer de un camión tanque dedicado a la transportación de gasolina. Si bien la contestación admite el empleo, niega que el demandante trabajara las horas adicionales alegadas en la demanda o que la demandada le deba al demandante salario alguno. Como defensas especiales, la demandada alega (1) prescripción de las reclamaciones por concepto de trabajo correspondiente a períodos de pago que se remonten a más de dos años con anterioridad a la fecha de la demanda, de conformidad con el "Portal-to-Portal Act", 29 U. S. C. sec. 255; (2) prescripción de tales reclamaciones después de transcurridos tres años, a tenor con el inciso tercero del artículo 1867, Código Civil de Puerto Rico, ed. 1930; (3) el haber actuado la demandada de buena fe conforme a y basada en reglamentación e interpretación administrativas bajo 29

U. S. C. secs. 258-259; (4) improcedencia de los daños líqui-
dos por haber actuado la demandada de buena fe y entendiendo
haber cumplido con la Ley Federal bajo 29 U. S. C. sec. 260;
(5) el demandante estaba impedido de ejercitar cualquier
causa de acción porque había firmado ciertos documentos que
indicaban que no tenía reclamación alguna contra la deman-
dada.

El 10 de abril de 1950 el tribunal de distrito declaró con
lugar la moción del demandante sobre inspección de las nó-
minas y las tarjetas diarias demostrativas de las entradas y
salidas de los empleados de la demandada desde el 7 de no-
viembre de 1935 hasta el 15 de mayo de 1949. El 13 de abril
de 1950 la demandada solicitó una orden similar, que le fué
concedida el 14 de abril de 1950 para inspeccionar "(a) cual-
quier lista, nota, anotación o escrito otro alguno preparado
por el demandante y/o por su abogado que el demandante
piense utilizar para probar las alegaciones de su demanda,
(b) cualquier correspondencia, circular o documento otro al-
guno en poder del demandante o de su abogado que el deman-
dante piense utilizar para probar las alegaciones de su de-
manda."

El 24 de abril de 1950 la demandada notificó 17 interro-
gatorios escritos que se resumen al calce.(¹) El tribunal de
distrito desestimó las objeciones del demandante a estos inte-
rrogatorios y dictó una resolución ordenándole al demandante
que los contestara. Después de obtener varias prórrogas para

---

(¹) Estos interrogatorios solicitaban del demandante la siguiente infor-
mación: (1) sus horas regulares de trabajo durante el período a que se
refiere la demanda; (2) la hora diaria de entrada y salida en su empleo
durante dicho período; (3) las horas extras adeudádasle e información
específica de qué consistió el trabajo extra que no le fué pagado; (4) el
nombre del empleado de la demandada que ordenó se hiciera dicho trabajo
extra; (5) los nombres de las personas a quienes el demandante normal-
mente entregaba gasolina; (6) el número de días a la semana que trabajó
durante dicho período; (7) las cantidades específicas pagádasle a él en cada
ocasión por horas extras trabajadas diaria o semanalmente durante dicho
período; (8) si trabajó con otros compañeros de trabajo durante las horas
extras, que exprese los nombres de éstos; (9) que indique si llevaba algún
récord de las horas extras trabajadas por él, y en tal caso, si está en poder

contestar los interrogatorios de la demandada, el 29 de diciembre de 1950 el demandante notificó a la demandada 18 interrogatorios escritos, que se leen así:

"1. ¿Cuáles fueron las horas regulares de trabajo del demandante como empleado de la demandada en cada día de cada uno de los períodos o espacios de tiempo comprendidos desde la letra (a) hasta la (o) en el apartado I de su contestación a la demanda en este pleito?

"2. ¿Cuál fué la hora de ingreso al trabajo del demandante y cuál la de su salida en cada uno de los días de cada uno de los períodos que menciona la precedente pregunta número 1?

"3. ¿Cuántas horas extras trabajó el demandante como empleado de la demandada en cada uno de los días de cada uno de esos mismos períodos?

"4. ¿Cuáles fueron esas horas extras, o sea desde qué momento hasta qué otro momento de cada día natural?

"5. ¿Quién o quiénes fueron durante cada uno de los expresados períodos los jefes inmediatos del demandante y qué cargo o empleo desempeñaba a la sazón cada uno de esos jefes inmediatos?

"6. ¿De quiénes recibía o podía recibir órdenes o instrucciones el demandante para realizar su labor como empleado de la demandada en cada uno de los períodos ya expresados; y qué cargo o empleo tenía entonces cada uno de los que daban o podían dar tales órdenes o instrucciones?

"7. Indique el nombre y dirección del comprador o receptor, así como la fecha, lugar y cantidad de entrega a dicho comprador o receptor, de gasolina u otro producto perteneciente a la demandada y encomendado al demandante para llevarlo a su des-

de su abogado, y si está en poder de alguna otra persona, que indique su nombre y dirección; (10) que exprese las leyes, reglamentos, decretos o convenios colectivos en los cuales basa su reclamación; (11) que indique los nombres y direcciones de los testigos que habrá de utilizar, expresando si son sus parientes o si son parientes entre sí, e indique los extremos que piensa establecer con cada testigo; (12) que exprese la evidencia documental que habrá de presentar para probar las alegaciones de su demanda; (13) que indique si con anterioridad a la radicación de la demanda, había hecho una reclamación por las horas extras aquí envueltas, indicando la fecha, a quién se hizo la reclamación y la forma en que se hizo; (14) que exprese qué base usó para llegar a la conclusión que su paga sencilla por hora era $0.5755, $0.75, $0.8125, $0.87½, $0.93¾ y $1.00 durante los respectivos seis períodos de empleo alegados en la demanda; (15) que indique

tino en el camión tanque a cargo de aquél, en cada día de cada uno de los períodos anteriormente aludidos.

"8. ¿Cuál fué el importe del salario regular y cuál el de cada una de las horas extras, indicando en cuanto a cada una de estas últimas su comienzo y terminación, compensación devengada, método seguido para computar tal compensación y concepto o labor que con ella se satisfizo, en cada uno de los días de cada uno de los períodos tantas veces nombrados ya?

"9. Diga si en el desempeño de su labor el demandante tenía que trabajar, y si como cuestión de hecho trabajaba, durante las horas regulares o las extras, por sí solo o acompañado, asistido o en unión de otro u otros compañeros de trabajo; y de contestarse esto último en la afirmativa, exprese el nombre y dirección de cada uno de esos otros compañeros de trabajo, indicando cuál o cuáles de ellos son todavía empleados de la demandada.

"10. ¿Tenía instrucciones o acostumbraba el demandante rendir informe escrito o verbal sobre la persona o personas, si algunas, que lo acompañaran o auxiliaran en la labor que realizara ya en las horas regulares o ya en las extras? De ser afirmativa la respuesta, ¿a quién había de someter el informe y cuándo, en qué forma y dónde se archivaba dicho informe? ¿Hacían eso los demás empleados que realizaban la misma o análoga clase de trabajo?

"11. ¿Cómo, por quién o quiénes y cuándo se preparaban y dónde y en poder de quién están ahora las nóminas, registros y anotaciones de horas extras trabajadas por los empleados, especialmente por el demandante, y cómo se procedía a pagarlas a base de tales nóminas, registros y anotaciones?

---

qué parte de su paga sencilla hasta tal fecha, de haber alguna, no había recibido cuando su empleo con la demandada terminó el 15 de mayo de 1949, y que indique además qué otra compensación, de haber alguna, recibió, dando la fecha del pago; (16) que exprese si es o no cierto que con posterioridad al 15 de mayo de 1949 suscribió ciertos documentos mencionados en el interrogatorio, aceptando que la demandada le había pagado todas las horas extras que se le adeudaban. Si admite haber suscrito los documentos, y tenga alguna objeción a su validez, que entonces indique en qué consiste tal objeción, por ejemplo, si alega que fué coaccionado o que los mismos se obtuvieron fraudulentamente o cualquier otra objeción que pueda tener contra los mismos; (17) que indique si marcaba o no tarjetas al entrar y salir del trabajo y, en caso afirmativo, dónde y en qué forma lo hacía, y si sus demás compañeros de trabajo hacían lo mismo, y que indique, además, si firmaba tales tarjetas y las entregaba a algún empleado de la demandada, a quién era que se las entregaba.

"12. ¿Cuál o cuáles fueron, identificándolos con sus respectivas fechas, números y títulos oficiales si los tuvieren, así como con expresión de los organismos o funcionarios que los promulgaron u otorgaron o personas que los suscribieron, las leyes, reglamentos, órdenes o decretos de salario mínimo, horas de labor o condiciones de trabajo, convenios colectivos y contratos de empleo, de locación de servicios o de otra clase en que se basó la demandada para computar el salario básico o corriente, las horas regulares y las horas extras de labor, los períodos de descanso remunerado (si alguno), la semana de trabajo y el mes de trabajo del demandante como empleado de la demandada en cada uno de los distintos períodos a que se refieren las precedentes preguntas marcadas con los números desde el 1 hasta el 8?

"13. Dé el nombre completo y la dirección, con calle, número, lugar y ciudad, de cada uno de los testigos que la demandada va a utilizar con el propósito o intención de probar las alegaciones de su contestación a la demanda, con expresión de cada uno de los particulares o extremos que intentará probar con cada uno de los testigos, así como con expresión del grado de parentesco, clase o descripción de amistad, relación contractual o de negocios, todo vínculo social, político, religioso y gremial y cualesquiera lazos o intereses comunes de compañerismo, fraternidad o asociación de alguna índole que puedan existir entre cada uno de esos testigos con cada uno de los demás testigos de la demandada, con cada uno de los oficiales, jefes y altos empleados de la demandada y con la demandada misma.

"14. Nombre y describa, de modo que pueda identificarse, expresando dónde se halla, cada pieza de prueba documental o escrita y cada objeto material perceptible a los sentidos que la demandada va a ofrecer o presentar en el juicio con el fin o intención de sostener las alegaciones de su contestación a la demanda, con expresa indicación de cada uno de los extremos o particulares que intentará probar con cada pieza, libro, documento, escrito u objeto material.

"15. Diga si existe y, en caso afirmativo, dónde y en poder de quién se halla cada uno de los tres documentos que se mencionan, bajo el epígrafe "stoppel" (sic) e inmediatamente antes de la súplica, en la página 5 de su contestación a la demanda; y diga también el lugar exacto y preciso, fecha, hora y ocasión en que se suscribió, qué motivo tuvo, quién redactó o preparó, con qué instrumento o medio mecánico aparece escrito, quiénes firmaron y en qué carácter, quiénes fueron testigos, quiénes más (si algunos)

se hallaban presentes al redactarse y quiénes al suscribirse, con qué y para quién o quiénes se firmó, cada uno de esos tres documentos.

"16. ¿Qué pagos ha hecho la demandada al demandante en cheque, cuáles en numerario y cuáles en otros objetos o en servicios?

"17. ¿Cuáles son los 'records de la demandada' de que habla la última oración del apartado II, página 4 de la contestación a la demanda?

"18. ¿Tenía órdenes y, como cuestión de hecho, acostumbraba el demandante preparar, marcar o firmar algún libro o libros, tarjetas o documentos que indicaran sus horas de llegada y de salida del trabajo? En caso afirmativo, diga si se trataba de libros, tarjetas o documentos y, cualesquiera de éstos que fueren, en qué sitio exacto y preciso, a cargo y bajo la custodia e inspección de quién o quiénes se hallaban entonces, así como en la actualidad. ¿Seguían los demás empleados igual procedimiento? ¿En cuántos de esos libros, tarjetas o documentos según fuere el caso, cuántos días y cuántas veces cada día, aparecen marcadas o firmadas, y con qué, las horas de entrada y salida del trabajo del demandante? ¿Qué empleado o agente de la demandada, o cuáles si más de uno, recibieron o recogieron, y cómo, cuándo, de quién o de dónde, los referidos libros, tarjetas o documentos, según fuere el caso? ¿Eran éstos impresos, en maquinilla, con encasillados o espacios para llenar o sin ellos, o total o parcialmente manuscritos?"

El tribunal de distrito desestimó las objeciones de la demandada a estos interrogatorios. La demandada radicó una moción de reconsideración que fué declarada sin lugar por el tribunal inferior, con excepción de que le ordenó que no contestara el Interrogatorio núm. 13, a la luz de lo resuelto en *Long Corporation* v. *Tribunal de Distrito*, 72 D.P.R. 32. Expedimos el auto de *certiorari* a solicitud de la demandada para revisar la resolución ordenándole que contestara los interrogatorios del demandante.

En *Hickman* v. *Taylor*, 329 U. S. 495, la Corte Suprema dijo a las páginas 500–01, 507:

"El mecanismo para obtener deposiciones y descubrir prueba antes del juicio establecido por las Reglas 26 a la 37 es una de las

más significativas innovaciones de las Reglas Federales de Procedimiento Civil. Bajo la práctica federal anterior, las funciones antes del juicio en cuanto a notificación, formulación de la cuestión envuelta y descubrimiento de hechos eran ejercidas primaria e inadecuadamente por las alegaciones. La investigación con respecto a las cuestiones y a los hechos antes del juicio era muy limitada y algunas veces el método era difícil. Las nuevas reglas, sin embargo, restringen las alegaciones a la tarea de notificar generalmente e invisten el proceso de descubrir prueba y obtener deposiciones con un papel vital en la preparación para juicio. Los varios instrumentos de descubrimiento sirven ahora (1) como un método, junto a la audiencia antes del juicio bajo la Regla 16, para limitar y aclarar las cuestiones básicas en controversia entre las partes, y (2) como un método, para determinar los hechos, u obtener información en cuanto a la existencia o pormenores de los hechos, en relación con dichas cuestiones en controversia. En esta forma, ya no es necesario celebrar en tinieblas los juicios en las cortes federales. La vía está ahora clara, consistente con los privilegios reconocidos, para que las partes obtengan antes del juicio el más completo conocimiento de los hechos y de las cuestiones envueltas.

" . . . . . . .

"Convenimos, desde luego, que a las reglas sobre descubrimiento de prueba y deposiciones debe dárseles una consideración amplia y liberal. Ya la antigua y venerable lamentación de 'expedición de pesca' no puede usarse para impedir a una parte inquirir en los hechos sobre los cuales su oponente basa su caso. El conocimiento mutuo de todos los hechos pertinentes que ambas partes han podido obtener es esencial para la debida y adecuada litigación. A tal fin, cualquier parte puede obligar a la otra a revelar cualesquiera hechos que tenga en su poder. El procedimiento para descubrir prueba y obtener deposiciones simplemente adelanta la etapa en la cual puede obligarse a una parte a producirlos, desde el día del juicio al período que lo precede, reduciendo en esta forma la posibilidad de sorpresa. . . ."

Así vemos que la función de las alegaciones es simplemente bosquejar la controversia y para que cada parte notifique a la otra de la naturaleza general de sus contenciones en contrario. Por otra parte, el método de descubrimiento, incluyendo los interrogatorios, está a mano para impedir que cualquiera de

las partes pueda ocultar algún hecho pertinente hasta el día del juicio. En verdad, las reglas de descubrimiento son la médula del esfuerzo para destruir de una vez y para siempre la deportiva teoría de justicia. Un pleito no debe continuar siendo una batalla de talentos entre los abogados. Las partes deben poner las cartas sobre la mesa antes del juicio, ya que "cualquier parte puede obligar a la otra a revelar cualesquiera hechos que tenga en su poder." Véase generalmente 4 Moore's *Federal Practice*, 2da. ed., pág. 1012 *et seq.*

El alcance del descubrimiento es amplio en extremo. La Regla 26(*b*) dispone que pueden tomarse deposiciones "con relación a cualquier asunto, no privilegiado, que fuere pertinente a la cuestión envuelta en la acción pendiente . . .". Los interrogatorios bajo la Regla 33 pueden cubrir el mismo amplio campo, ya que el alcance de la investigación mediante interrogatorio bajo la Regla 33 es coextensivo al alcance del descubrimiento mediante deposición bajo la Regla 26(*b*). 4 Moore, supra, págs. 2289–91. Esto quiere decir que el descubrimiento, bien por deposición o por interrogatorios, no se limita a solicitar evidencia admisible en el juicio. Por el contrario, el descubrimiento puede utilizarse, entre otras cosas, (1) para limitar las cuestiones envueltas con el fin de limitar la presentación de evidencia durante el juicio a aquellas cuestiones que todavía siguen en controversia; (2) para obtener evidencia para usarla durante el juicio; (3) para obtener información que pueda servir como pista para encontrar evidencia que pueda utilizarse en el juicio. Holtzoff, *Instruments of Discovery Under Federal Rules of Civil Procedure*, 41 Mich. L. Rev. 205–06.

Esto no quiere decir que la investigación antes del juicio mediante interrogatorio no tenga sus límites. En primer lugar, los interrogatorios pueden ser rechazados *a discreción de la corte sentenciadora* si la investigación "claramente está fuera de los linderos del caso". 4 Moore, supra, pág. 2297. En segundo lugar, aun cuando la información solicitada sea pertinente, una parte no puede obstaculizar a su oponente con

interrogatorios costosos y onerosos cuando la información solicitada no es, comparativamente hablando, de valor sustancial a la parte que la solicita. 4 Moore, supra, pág. 2314. Aquí también la cuestión descansa en la sana discreción del tribunal de distrito.

 Con conocimiento de las anteriores consideraciones, pasemos primeramente a la contención de la demandada de que no empece su pertinencia los interrogatorios solicitan información cuya contestación sería onerosa y opresiva para ella. Su teoría es que el demandante, mediante la inspección de los libros de la demandada, puede obtener dicha información por sí mismo, y que ella no debe ser obligada a seleccionar y compilarle estos datos al demandante.

Sobre esta cuestión, los principios generales que pueden colegirse de la jurisprudencia aparecen expuestos en 4 Moore, supra, págs. 2314–16, como sigue:

"(1) El hecho de que la contestación a interrogatorios pueda ser onerosa o costosa no constituye objeción válida alguna si la información solicitada es pertinente y material. Sin embargo, la corte tiene autoridad para dictar las providencias necesarias a fin de impedir la opresión y evitar gastos indebidos, y 'cuando la inconveniencia es grande, cuando se impone una segregación y análisis de material en demasía o cuando los datos y la información pueden ser seleccionados y compilados, alguna parte, y quizá la mayor parte, de ese esfuerzo e inconveniencia debe imponérsele a la parte que solicita tal información.' La corte debe pesar la inconveniencia y gastos envueltos frente al valor de la información solicitada; si bien la concesión de interrogatorios descansa en la sana discreción de la corte, la presunción usual es a favor del descubrimiento liberal de hechos pertinentes.

"(2) 'Una parte no puede objetar interrogatorios a base de que los mismos requerían amplia búsqueda, investigación y gastos, si dichos interrogatorios se refieren a detalles expuestos en su alegación y respecto de los cuales ella presumiblemente tiene información', a menos que 'la contestación de ellos requiera una búsqueda o compilación excesiva u opresiva de datos a un alto costo.'

"(3) Si bien una parte debe suministrar, al contestar interrogatorios, cualquier información que tenga disponible, de ordi-

nario tal parte no vendría obligada a 'hacer una búsqueda o compilación de datos que ella aún desconoce'—por lo menos si éstas están igualmente al alcance de la parte peticionaria.

"(4) La objeción general de que los interrogatorios son onerosos y gravosos y requieren que la parte realice una búsqueda y compile los datos, no levanta ninguna cuestión meritoria. Tal objeción debe demostrar específicamente los motivos por los cuales no debe contestarse el interrogatorio."

La demandada no nos ha demostrado específicamente la inconveniencia exacta que se le impondría de tener que contestar estos interrogatorios. Manifiesta en su alegato que más de 11,200 asientos individuales tendrían que ser compilados meramente para contestar la pregunta en relación con la hora de entrada y salida del demandante todos los días durante 14 años.(²) No es suficiente una manifestación tan general. No dice en cifras cuánto tiempo invertiría para averiguar las horas de entrada y salida. Si, como alega la demandada, el demandante no trabajó horas extras excepto en muy pocas ocasiones, sólo necesita indicar éstas y manifestar que durante el resto del tiempo hubo una hora uniforme de entrada y salida a tal o cual hora. Además, toda vez que se admite que la demandada está cubierta por la Ley Sobre Normas Razonables del Trabajo, la demandada viene obligada por ley a llevar los records prescritos por el Administrador Federal, 29 U.S.C., *Appendix*, pág. 433 *et seq.*(³) En ausencia de prueba en contrario, no creemos que sea irrazonable suponer que en un período de tiempo comparativamente corto un oficinista de la demandada, familiarizado con dichos records, podría con ayuda de una máquina calculadora, que indudablemente ella posee, tabular la información solicitada en los interrogatorios

---

(²) Como más adelante se indica, la demandada tiene derecho a una vista preliminar en relación con su defensa especial de prescripción, y posiblemente tenga que contestar solamente los interrogatorios para dos años.

(³) En el pasado hemos dado mucho peso a tales records cuando éstos son llevados de conformidad con la ley, aun hasta el extremo de alterar conclusiones de hecho de las cortes de distrito basadas en prueba oral cuando confligen con tales records. *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 300–01; *Vélez* v. *Royal Bank*, 65 D.P.R. 967.

relativa a las horas trabajadas por el demandante y la paga recibida por éste.

En verdad, un estudio imparcial del asunto ha revelado que de haber opresión en esta clase de caso en el pasado, ésta ha sido de parte de los patronos y no de los empleados. Speck, *The Use of Discovery in United States District Courts*, 60 Yale L. J. 1132, 1143-44 dice que "La única norma general del abuso del descubrimiento apareció en el uso de interrogatorios en los casos de la Ley Federal sobre Normas del Trabajo que trataban de cuestiones sobre portal-a-portal y tiempo extra-sobre-tiempo extra. Estos casos fueron típicamente instados por cientos o miles de demandantes individuales contra una o más firmas estibadoras o de transporte. Las demandadas casi invariablemente solicitaban la contestación de interrogatorios al contestar o poco después, pidiéndoles a los abogados de los demandantes que les suministraran el nombre, dirección, número del seguro social, el número de la compañía, períodos de empleo y costumbres del empleo con respecto a cada demandante, o cada demandante que alegaba había sido empleado por una demandada específica. Teóricamente, los demandantes deben poder presentar sus reclamaciones específicamente en términos de horas trabajadas en determinados días, pero estos demandantes eran obreros con poca educación cuyos empleos cambiaban frecuentemente—en el caso de los estibadores, quizá de día en día—y quienes no llevaban records y no podrían posiblemente recordar sus horas de trabajo durante los varios años envueltos en los pleitos. Las demandadas, que podían obtener esta información de sus propios records, no podían seriamente esperar que fueran los demandantes los que la suministraran. En esta forma, tales interrogatorios fueron probablemente radicados para obstaculizar a los demandantes y tomar ventajas en el remedio bajo la Regla 37. En algunos casos de Nueva York los demandantes en represalia solicitaron 33 partidas de información relacionadas con las horas y los turnos trabajados, la carga manejada, los clientes servidos, etc., para cada uno de 5,000 deman-

dantes. En este caso, la inconveniencia de las demandadas para contestar aun cuando sus records contuvieran dicha información, sería tremenda. *Estas preguntas debieron ser contestadas mediante una minuciosa investigación de una pequeña selección de los empleados, cuyos resultados se aplicarían a los demás.*" (Bastardillas nuestras.)

Igual que los casos citados por Speck, aquí la demandada inició esta clase de interrogatorios. Véase la nota 1. Difícilmente puede la demandada quejarse de que el demandante sea un discípulo aprovechado y sometió a la demandada sustancialmente los mismos interrogatorios. No vemos opresión sobre ninguna de las partes al requerírseles que cambien entre sí información pertinente en cuanto al récord de trabajo de un solo demandante. La demandada debe recordar que lo que es bueno para uno es bueno para el otro. (⁴)

La demandada no descansa en ciertos casos que han resuelto que una parte a quien le han solicitado interrogatorios no puede "devolver la bola" a la parte contraria notificándole sustancialmente idénticos interrogatorios. *Brown* v. *Dunbar & Sullivan Dredging Co.*, 8 F.R.D. 105 (Dist. Ct., N. Y., 1948; *Woods* v. *Kornfield*, 9 F.R.D. 196 (Dist. Ct., Pa., 1949). Convenimos con Moore en que dichos casos no fueron correctamente resueltos en cuanto a este particular. Según indica él, una parte no puede "impedir la debida investigación anticipando la línea de ataque del adversario y notificándole interrogatorios primeramente. La cuestión es quién debe suministrar la información a la otra parte, y no quién notifica primero su interrogatorio." 4 Moore, supra, pág. 2261.

Nos damos cuenta del argumento de que el demandante puede obtener esta información por sí mismo inspeccionando los records de la demandada bajo una orden del tribunal de distrito. Pero los interrogatorios no se limitan a obte-

---

(⁴) Quizá llegaríamos a un resultado diferente si estuvieran envueltos en este caso cientos de empleados como en el ejemplo expuesto por Speck. Pero aquí los interrogatorios recíprocos radicados por las partes no sufren del defecto descrito por Speck ya que solamente se trata de un solo demandante.

ner información. Otro de los fines, como ya hemos visto, es obtener admisiones de hechos de manera que no haya necesidad de presentar prueba. En verdad, ocasionalmente las contestaciones a los interrogatorios pueden proporcionar base para una sentencia sumaria, eliminando con ello la necesidad de un juicio. *Cámara de Comerciantes* v. *Osorio*, 68 D.P.R. 664. En consecuencia, aun cuando el demandante tenga acceso a los records de la compañía, ésta puede ser requerida para que admita los hechos revelados por sus records.

Bajo todas las circunstancias de este caso, no podemos convenir con la demandada en que ha cumplido con el requisito de demostrar afirmativamente que los interrogatorios solicitando información en relación con las horas de trabajo del demandante y paga recibida por éste, son opresivos y onerosos según se comparan con el valor sustancial que para el demandante tienen para poder así limitar las cuestiones de hecho que en realidad estarán en controversia en el juicio. *Adelman* v. *Nordberg Mfg. Co.*, 6 F.R.D. 383 (Dist. Ct., Wisc., 1947) ; *Brown* v. *Dunbar & Sullivan Dredging Co.*, 8 F.R.D. 107 (Dist. Ct., W. D., N. Y., 1948) ; *Aktiebolaget Vargos* v. *Clark*, 8 F.R.D. 635 (Dist. Ct., D. C., 1949) ; véase *O'Malley* v. *Chrysler Corporation*, 160 F. 2d 35 (C. A. 7, 1947).(5)

Pasemos ahora a la serie de interrogatorios objetados por la demandada por el fundamento de que éstos solicitan información impertinente. Aquí la demandada arguye que ha alegado la prescripción de dos y tres años bajo las leyes federal e insular, respectivamente, y que por tanto no se le debe obligar a contestar interrogatorios relacionados con trabajo realizado más de dos años antes de la radicación de la demanda el 2 de marzo de 1950. A pesar de la liberali-

---

(5) Dejamos sin resolver la cuestión de si llegaríamos a un resultado diferente si este caso hubiera sido radicado por el Comisionado del Trabajo que inspecciona los libros de los patronos, a tenor con la ley, y que tiene autoridad para demandarlos en reclamación de salarios para beneficio de sus empleados. Véase *Sierra* v. *Román*, ante pág. 308. *Cf. Walling* v. *Parry*, 6 F.R.D. 554 (Dist. Ct., Pa., 1947) ; *United States* v. *American Locomotive Co.*, 6 F.R.D. 35 (Dist. Ct., Ind., 1946) ; *Porter* v. *Central Chevrolet*, 7 F.R.D. 86 (Dist. Ct., Ohio, 1946).

dad de las reglas de descubrimiento, "los interrogatorios deben tener alguna relación con el asunto de la causa de acción ejercitada." 4 Moore, supra, pág. 2300. La jurisprudencia por consiguiente resuelve, y nosotros convenimos con ello, que los interrogatorios relacionados con reclamaciones basadas en hechos que ocurrieron fuera del término prescriptivo de ordinario deben ser rechazados. 4 Moore, supra, pág. 2302; *Adelman* v. *Nordberg Mfg. Co.*, supra. (6)

Una dificultad en relación con la aplicación de las anteriores autoridades estriba en que en nuestro caso la cuestión de prescripción no se ha resuelto aún. Sin embargo, hemos caracterizado el artículo 1867 del Código Civil como que provee un término de prescripción que es altamente irrazonable en su funcionamiento práctico. *Chabrán v. Bull Insular Line*, 69 D.P.R. 269, 284. Creemos que como ocurre aquí, cuando una reclamación se retrotrae a 14 años, a la demandada debe dársele la oportunidad de solicitar una vista preliminar con respecto a su defensa de prescripción. Véase *Muñoz v. Tribl. de Distrito*, 72 D.P.R. 842. Después que el tribunal inferior resuelva la cuestión de prescripción, la demandada será requerida a contestar solamente aquellos interrogatorios que se relacionen con las reclamaciones que no sucumbieron a causa de la prescripción o de alguna otra defensa. (7)

Aparte de la cuestión de prescripción, la demandada objeta específicamente los Interrogatorios núms. 5, 6, 7,

---

(6) No debe entenderse como que resolvemos que no puede jamás inquirirse por trabajo realizado antes del término prescriptivo. Por ejemplo, si fuere esto pertinente para determinar una norma de conducta, la investigación no se terminaría necesariamente en forma automática a la fecha en que la prescripción estatutaria finaliza. Véase 4 Moore, supra, pág. 1067. Pero aquí el demandante no suscita tal contención.

(7) Huelga añadir que no estamos expresando conclusión alguna en cuanto a la procedencia de cualquiera de las defensas especiales, incluyendo la prescripción. Asimismo, si la demandada solicita tal vista preliminar, ésta debe celebrarse prontamente y la cuestión resuelta lo antes posible toda vez que este pleito de salarios ya se ha dilatado considerablemente. Además, la resolución requiriendo que se contesten los interrogatorios de la demandada debe desde luego ser examinada nuevamente a la luz de lo que se resuelva en cuanto a la prescripción.

10 y 12 por el fundamento de que la información solicitada en ellos no es pertinente. Descansa en una manifestación contenida en 4 Moore, supra, pág. 2301 al efecto de que "Los interrogatorios en un pleito bajo la Ley sobre Normas Razonables del Trabajo no pueden solicitar información en cuanto a empleados que no son partes en el pleito y quienes no serán afectados por el mismo."

Convenimos con la anterior cita de Moore porque de ordinario información en cuanto a compañeros de trabajo que no son partes en el pleito, nada tiene que ver con las reclamaciones de otros empleados. Pero los Interrogatorios núms. 5, 6 y 10 no son meros esfuerzos para obtener información en cuanto a los salarios de compañeros de trabajo. Al preguntar en los Interrogatorios núms. 5 y 6 la identidad y el cargo del jefe inmediato del demandante, éste puede estar tratando de hallar pistas, que más luego puede seguir mediante deposiciones o durante el juicio, con el fin de sustanciar su reclamación por horas extras. Como ya hemos visto, el demandante tiene derecho a hacer uso de tal "expedición de pesca" que envuelve hechos que no son admisibles en evidencia, si es razonablemente calculada como que eventualmente lo llevará a descubrir evidencia admisible. En igual forma, la contestación al Interrogatorio núm. 10 le ayudará a determinar la manera más efectiva de obtener prueba documental para su reclamación. En verdad, la demandada empleó este mismo enfoque en sus propios Interrogatorios núms. 4 y 8. En su consecuencia, no podemos convenir en que la información solicitada en los Interrogatorios 5, 6 y 10 no sea pertinente.

Sin embargo, convenimos con la demandada en que el Interrogatorio núm. 7 es improcedente. Exigirle a ésta que identifique a cada comprador de gasolina y la cantidad entregádale en cada viaje durante un número de años, sería una ciclópea labor ya que no es muy probable que tal información se guarde en forma tabulada. Por otro lado, no podemos ver en qué forma sería esta información de ayuda

efectiva al demandante para establecer su reclamación o para proporcionarle una pista para hallar otra información.([8])

El Interrogatorio núm. 12 tampoco tiene que contestarse con excepción de aquella parte que solicita la identificación de convenios colectivos u otros contratos privados en que descansa la demandada. Como hemos visto, uno de los propósitos de los interrogatorios es limitar las cuestiones en controversia para que la parte actora pueda determinar con qué es que se va a enfrentar durante el juicio. Por consiguiente, no sentamos regla inflexible alguna de que opiniones o "contenciones" no puedan obtenerse mediante interrogatorios. 4 Moore, supra, págs. 2310–12. *Cf.* la última oración del Interrogatorio núm. 16 de la demandada, nota 1. Pero ningún caso hemos encontrado que resuelva que la teoría de *derecho* en que descansa la parte contraria pueda ser descubierta por interrogatorios. Aun Holtzoff, que es ultraliberal en esta cuestión, dice en 41 Michigan L. Rev., supra, a la pág. 215, que una parte no puede ser interrogada sobre "conclusiones de derecho". Al mismo efecto, *Aktiebolaget Vargos* v. *Clark*, supra. Una conferencia antes del juicio indudablemente sería de gran ayuda y debe usarse para determinar las precisas cuestiones de derecho que hay en un caso, 4 Moore, supra, pág. 2312. Pero no podemos resolver que los interrogatorios son adecuados para minuciosas cuestiones sobre la ley aplicable con el fin de obtener los frutos del trabajo legal de la parte contraria. Creemos que esto tiende a acercarse al producto del trabajo del abogado, el cual la Corte Suprema en *Hickman* v. *Taylor*, supra, protegió contra los interrogatorios.([9])

La demandada afirma que el tribunal inferior debió haber declarado con lugar sus objeciones a ciertas preguntas por el fundamento de que la información en ellas solicitada

---

([8]) La propia demandada abrió la puerta en cuanto a esta clase de pregunta en su Interrogatorio núm. 5. Suponemos que el tribunal inferior modificará su resolución ordenando al demandante que conteste dicha pregunta en vista de nuestra resolución en este caso.

([9]) Lo que hemos dicho en la nota 8 también es aplicable al Interrogatorio núm. 10 de la demandada.

fué ya suministrada por la demandada en su contestación. El alegato de la demandada argumenta este punto sólo en cuanto al Interrogatorio núm. 8. La contestación a este argumento ya se ha dado. Como hemos visto, los interrogatorios pueden usarse no solamente para obtener información, si que también para obtener admisiones de cuestiones en controversia que reducirán las cuestiones a ser discutidas en el juicio. Una parte algunas veces negará hechos en una contestación, los cuales tendrá que admitir cuando se le acose con interrogatorios específicos. El demandante por tanto tenía derecho a someter interrogatorios a la demandada en cuanto a sus horas de trabajo y paga recibida, aun cuando la demandada alegue que ha incorporado tal información en su contestación.

Convenimos con la demandada en que el Interrogatorio núm. 14 es improcedente bajo la regla establecida en *Long Corporation* v. *Tribunal de Distrito*, supra. Al mismo efecto, *Aktiebolaget Vargos* v. *Clark*, supra.([10])

Excepto en los casos ya discutidos, no hallamos que el tribunal inferior abusara de su discreción al ordenarle a la demandada que contestara los interrogatorios notificádosle por el demandante. *Newell* v. *Phillips Petroleum Co.*, 144 F. 2d 338 (C. A. 10, 1944).

La resolución del tribunal de distrito será modificada en el sentido de proveer que (1) los Interrogatorios núms. 7 y 14 no tienen que ser contestados; (2) el Interrogatorio núm. 12 no tiene que ser contestado, con excepción de en lo que éste se refiere a convenios colectivos u otros contratos privados; (3) todos los interrogatorios en relación con horas de trabajo y paga recibida no tienen que ser contestados en relación con trabajo realizado más de dos años antes de la radicación de la demanda, hasta que el tribunal inferior resuelva la cuestión de prescripción. *Con la resolución del tribunal de distrito así modificada, se devolverá el caso para ulteriores procedimientos.*

---

([10]) Aquí también el Interrogatorio núm. 12 de la demandada debe ser examinado de nuevo por el tribunal inferior a la luz de esta decisión.